UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**JUAN CARLOS BETHANCOURT SOTO**,

    *Petitioner*,

v.

**LUIS SOTO,** *et al.*,

    *Respondents*.

No. 25-cv-16200

OPINION

**O'HEARN, District Judge.**

Petitioner, Juan Carlos Bethancourt Soto, is an immigration detainee currently detained at the Delaney Hall Detention Facility in Newark, New Jersey, and he has filed a counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1 at ¶ 1). For the reasons set forth in this Opinion, the Court will grant the Petition.

**I.  BACKGROUND**

Petitioner is a native and citizen of Guatemala. (*Id*.). He entered the United States without inspection on May 31, 2018, with his mother on his twelfth birthday. (*Id*. at ¶ 2). Shortly after their arrival, Petitioner was separated from his mother and placed in the custody of the Department of Health and Human Services. (*Id*. at ¶¶ 3–4). He was reunited with his mother seven weeks later, and both were released from custody on July 23, 2018, under an order of release on recognizance. (*Id*. at ¶ 4).

Following his release, Petitioner and his mother settled in Camden, New Jersey, where Petitioner has resided since that time. (*Id*. at ¶ 5). He attended school for several years before leaving to work in factories to support himself and his siblings in Guatemala. (*Id*.). In 2024,

Petitioner's mother returned to Guatemala, and he remained in New Jersey, residing with relatives. (*Id.*).

On September 16, 2025, Immigration and Customs Enforcement ("ICE") officers arrested Petitioner while he was working at a fruit packing facility in Gloucester County, New Jersey. (*Id.* at ¶ 6). He was not charged with any crimes and was transferred to the Delaney Hall Detention Facility in Newark, New Jersey. (*Id.*). Following his arrest, there is some dispute as to whether Petitioner was properly placed in removal proceedings, (*id.* at ¶ 33; ECF No. 7 at 10–11), but on September 29, 2025, an immigration judge closed those proceedings for failure to prosecute. (ECF No. 1 at ¶ 33). Despite that closure, Petitioner remained in custody without a bond determination. (*Id.* at ¶ 34).

On October 1, 2025, Petitioner sought bond, (*Id.* at ¶ 10), and an immigration judge denied the request, concluding that the court lacked jurisdiction to consider bond, due to the Board of Immigration Appeals' ("BIA") recent decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). (*Id.*). Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a). *Hurtado*, 29 I. & N. Dec. at 227–29.

Petitioner now argues that since he was apprehended after residing within the United States for many years, he should be detained under § 1226(a), which authorizes discretionary detention "pending a decision on whether the [noncitizen] is to be removed from the United States" and expressly permits immigration judges to conduct a bond hearing. (*Id.* at ¶ 35). According to Petitioner, for decades before *Hurtado*, the Government followed a consistent practice of distinguishing between individuals who had recently arrived at the border and those already living

2

within the United States. (*Id.* at ¶¶ 35–38). Indeed, Respondent admits this had been the practice prior to July 8, 2025 when ICE suddenly changed its position, interpretation and application of the relevant statutes. (ECF No. 7 at 14 n.4).

On October 15, 2025, the Department of Homeland Security ("DHS") filed a second notice to appear to initiate removal proceedings against Petitioner, which remain pending. (ECF No. 7-3). Petitioner argues, however, that the notice is deficient because it was never properly served upon him as required by 8 U.S.C. § 1229(a)(1), reflects an incorrect address at a facility where he has never been housed, and contains internally inconsistent dates suggesting that it was "served" nearly a month before it was filed with the immigration court. (ECF No. 8 at 10–11).

Petitioner filed the instant Petition on October 2, 2025, arguing that *Hurtado* was wrongly decided and in any event, is not binding upon this Court, and that his mandatory detention under § 1225 violates his statutory and constitutional rights. (ECF No. 1 at ¶¶ 55–69). He seeks release from custody or, in the alternative, a bond hearing under § 1226(a). (*Id.* at ¶¶ 69–73). Respondents filed an Answer opposing relief, (ECF No. 7), and Petitioner filed a Reply. (ECF No. 8).

**II.     STANDARD OF REVIEW AND JURISDICTION**

District courts have jurisdiction under 28 U.S.C. § 2241 to hear claims that an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 439 (3d Cir. 2021); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 440 (D.N.J. 2019). Petitioners have the burden to demonstrate that their detention violates the Constitution or federal law. *See, e.g.*, § 2241(c)(3); *Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *4 (D.N.J. Sept. 26, 2025); *Sarkisov v. Underwood*, No. 24-88, 2025 WL 1640826, at *1 (W.D. Pa. May 5, 2025).

As Petitioner was detained in New Jersey at the time he filed his Petition and challenges the legality of that detention on federal constitutional and statutory grounds, this Court has jurisdiction to consider his claims. (ECF No. 1 at ¶¶ 1, 55–69).

## III. DISCUSSION

Petitioner argues that because he was apprehended inside the United States after residing here for many years, his continued detention without a bond hearing violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. More specifically, he contends that he is not subject to mandatory detention under § 1225(b)(2), and that he should be released or treated as a detainee under § 1226(a) and entitled to seek bond. (ECF No. 1 at ¶¶ 11, 51, 55–69). Respondents contend that Petitioner's detention is lawful pursuant to *Hurtado*, arguing that despite decades of contrary practice, nearly all noncitizens present in the United States without admission are subject to mandatory detention under § 1225(b). (ECF No. 7 at 7–8).

A.      **The July 8, 2025 Policy Change**

The circumstances of this case arise from a July 8, 2025 DHS internal memo[1] to all ICE employees, drastically changing how the agency interpreted the INA's detention provisions. (ECF No. 1 at ¶ 39; ECF No. 7 at 13–14). Under the new interpretation and policy, individuals "present in the United States without admission or parole" are now treated as "applicants for admission" subject to mandatory detention under § 1225(b)(2), rather than discretionary detention under § 1226(a). (ECF No. 1 at ¶ 39; ECF No. 7 at 13–14). Thus, nearly all noncitizens who have never been admitted, regardless of whether they were stopped at the border or arrested years later inside the country, are now classified as an "applicant for admission" that is "seeking admission" into the country under § 1225(b). (*See* ECF No. 7 at 13–14; ECF No. 1 at ¶¶ 39–40). This interpretation

---

[1] Although Respondents have not provided the Court with a copy of the memo, Judge Boulware described the leaked memo in *Vazquez v. Feeley*, No. 25-01542, 2025 WL 2676082, at *5 (D. Nev. Sept. 17, 2025), as follows:

> On July 8, 2025, DHS instituted a notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" to all ICE Employees. The Notice indicated that DHS, in coordination with the DOJ, "revisited its legal position" on the INA and determined that § 1225(b)(2), rather than § 1226, is the applicable immigration authority for any alien present in the U.S. "who has not been admitted . . . whether or not at a designated port of arrival." Accordingly, "it is the position of DHS that such aliens are subject to [mandatory] detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole." The Notice further provides "[t]hese aliens are also ineligible for a custody redetermination hearing (bond hearing) before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated."

(footnotes omitted) (alterations in original).

5

potentially "subjects millions of noncitizens to mandatory prolonged detention without the opportunity for release on bond, no matter how long they have resided within the country." *Zumba*, 2025 WL 2753496, at *4 (quoting *Vazquez*, 2025 WL 2676082, at *1); *Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238, at *5 (D. Mass. July 24, 2025) ("It has been estimated that this novel interpretation would require the [mandatory] detention of millions of immigrants currently residing in the United States.").

Respondents acknowledge this drastic and sudden change in policy, conceding that immigration authorities "did not always interpret [§ 1225(b)] that way," and until recently, "read § 1225(b) to apply only to those who have arrived in the United States." (ECF No. 7 at 14 n.4). Respondents admit that even DHS's predecessor agency, the U.S. Immigration and Naturalization Service, "detained arriving aliens" under § 1225(b), but "[n]oncitizens who were present without admission were detained under the discretionary rules of 8 U.S.C. § 1226(a)." (*Id.* (citing *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312-01, 10323, 1997 WL 93131 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."))). *See generally Zumba*, 2025 WL 2753496, at *4 ("Respondents readily admit that if petitioner had been arrested on the basis of her inadmissibility prior to July 8, 2025, she would have been discretionarily detained under 8 U.S.C. § 1226(a) and eligible for a bond hearing.").

Indeed, it was previously well established that § 1225(b) applied "primarily" to individuals arriving at our nation's borders, ports of entry, or other points of inspection and who were "seeking entry" into the United States. *E.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 285, 297 (2018)

(explaining that "§ 1225(b) applies primarily to aliens seeking entry into the United States" in the context of "aliens who have arrived at an official 'port of entry' (*e.g.*, an international airport or border crossing) or who have been apprehended trying to enter the country at an unauthorized location"); *Rodriguez v. Robbins*, 715 F.3d 1127, 1132 (9th Cir. 2013) (explaining that § 1225(b) "applies to 'applicants for admission,' such as those apprehended at the border or at a port of entry.").

On the other hand, as the Supreme Court described, § 1226 "generally governs the process of arresting and detaining" noncitizens "once inside the United States." *Jennings*, 583 U.S. at 288. "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2) . . . [and] to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289. Consistent with that interpretation, Respondents[2] recently admitted in *Zumba* that "up until July 8 the predominant form of detention authority for . . . noncitizens arrested in the interior of the United States was § 1226(a)." 2025 WL 2753496, at *3 (cleaned up).

**B.   The Relevant Statutes**

With that historical backdrop, Petitioner contends that § 1226(a) governs his detention, (ECF No. 1 at ¶ 51), and Respondents maintain that § 1225(b)(2) controls. (ECF No. 7 at 13–14). "Given that detention under § 1225(b)(2) is essentially mandatory and that detention under § 1226(a) is largely discretionary," determining which statute applies carries significant consequences for Petitioner. *Lopez Benitez v. Francis*, No. 25-5937, 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025) ("[T]here is no dispute that the provisions . . . are mutually exclusive—

---

[2] Except for Respondent Tsoukaris, who was not a party in *Zumba*.

7

a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226.").

When faced with an issue of statutory construction, courts must first "start . . . with the statutory language." *E.g.*, *United States v. Brow*, No. 22-2203, 2023 WL 2443081, at *4 (3d Cir. Mar. 10, 2023) (citation omitted). A court must determine "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100 (2012) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). Courts should generally interpret words "as taking their ordinary, contemporary, common meaning at the time Congress enacted the statute." *Wisconsin Cent. Ltd v. U.S.*, 585 U.S. 274, 284 (2018) (alteration and citation omitted). Courts must also read the words "in their context and with a view to their place in the overall statutory scheme." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). "When the words of a statute are unambiguous . . . [the] judicial inquiry is complete." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992) (quotation marks and citation omitted).

In other words, a court may not "replace the actual text with speculation as to Congress' intent." *Magwood v. Patterson*, 561 U.S. 320, 334 (2010). Rather, a court must "presume" that "the legislature says what it means and means what it says." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017)).

Applying those principles here, the Court begins with the relevant language of § 1225:

**§ 1225. Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing**

    **(a) Inspection**

        **(1) Aliens treated as applicants for admission**
        An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival

and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

**(2) Stowaways**
An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted and shall be ordered removed upon inspection by an immigration officer. Upon such inspection if the alien indicates an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview under subsection (b)(1)(B). A stowaway may apply for asylum only if the stowaway is found to have a credible fear of persecution under subsection (b)(1)(B). In no case may a stowaway be considered an applicant for admission or eligible for a hearing under section 1229a of this title.

**(3) Inspection**
All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers.

**(4) Withdrawal of application for admission**
An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States.

**(5) Statements**
An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States, including the applicant's intended length of stay and whether the applicant intends to remain permanently or become a United States citizen, and whether the applicant is inadmissible.

**(b) Inspection of applicants for admission** . . .

**(2) Inspection of other aliens**

**(A) In general**
Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

**(B) Exception**
Subparagraph (A) shall not apply to an alien—

> **(i)** who is a crewman,
> **(ii)** to whom paragraph (1) applies, or
> **(iii)** who is a stowaway.

Next, the relevant language of § 1226:

**§ 1226. Apprehension and detention of aliens**

> **(a) Arrest, detention, and release**
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
>> **(1)** may continue to detain the arrested alien; and
>>
>> **(2)** may release the alien on—
>>
>>> **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>>
>>> **(B)** conditional parole; but
>>
>> **(3)** may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

As Respondents contend that Petitioner is subject to § 1225(b)(2)(A), the Court begins with the text of that provision: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." § 1225(b)(2)(A) (emphasis added). Thus, it is unambiguous and patently clear that for the provision to apply and thus subject a noncitizen to mandatory detention: (1) there must be an "examining immigration officer" who determines; (2) that an "applicant for admission"; (3) is "seeking admission"; and (4) "not clearly and beyond a doubt entitled to be admitted." *Id.*; *Zumba*, 2025 WL 2753496, at *8; *Benitez*, 2025 WL 2371588, at *5; *Martinez*, 2025 WL 2084238,

10

at *2. Under the INA, an "applicant for admission" is a term of art defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Benitez*, 2025 WL 2371588, at *6. Respondents contend that § 1225(b)(2) is a "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," including a noncitizen "present in the United States without admission or parole," like Petitioner. (*See* ECF No. 7 at 13–14 (quotation marks omitted)). In other words, they argue that "all 'applicants for admission' are, by definition 'seeking admission.'" (*Id*. at 15).

But Respondents' interpretation "violates the rule against surplusage and negates the plain meaning of the text." *E.g.*, *Martinez*, 2025 WL 2084238, at *6 (citation omitted); *see also Zumba*, 2025 WL 2753496, at *8; *Benitez*, 2025 WL 2371588, at *6. The phrase "seeking admission" in § 1225(b)(2)(A) necessarily connotes some affirmative, present-tense action. The verb "seeking" is a present participle, and the "present participle is used to signal present and continuing action." *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, 48 F.4th 1298, 1307 (11th Cir. 2022); *see, e.g.*, *D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co.*, 88 F.4th 602, 610 (5th Cir. 2023) ("The word 'providing,' used here as a present participle, most commonly describes a person who is *currently* providing services.") (emphasis in original); *United States v. Hull*, 456 F.3d 133, 145 (3d Cir. 2006) (Ackerman, Sr. Dist. J., sitting by designation, concurring) ("Congress's use of the present participle 'committing' connotes present, continuing action."); Present Participle, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/present%20participle (last visited Oct. 20, 2025) ("[A] participle that typically expresses present action in relation to the time expressed by the finite verb in its clause and that in English is formed with the suffix *-ing* and is used in the formation of the progressive tenses."); *see also Martinez*, 2025 WL 2084238, at *6.

11

As such, Respondents' argument that § 1225(b)(2)(A) requires no "affirmative" action, is contrary to the plain, ordinary meaning of the words "seeking admission." (*See* ECF No. 7 at 14–15). "Seeking admission" clearly requires an act currently underway not a static condition. *E.g.*, *Zumba*, 2025 WL 2753496, at *8; *Benitez*, 2025 WL 2371588, at *6. For example, one could deem every person in the country a "potential homebuyer," but they are not "seeking to buy a home," without taking some affirmative action towards that goal. Nor is every "employable adult" in the country "applying for a job," simply because jobs exist. Or, as Judge Ho explained in *Benitez*, "someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there." *Benitez*, 2025 WL 2371588, at *7. Further, "[e]ven if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' . . . at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there." *Id*.

Respondent's interpretation also "violates the rule against surplusage." *Id*. (quoting *Martinez*, 2025 WL 2084238, at *6). As the Supreme Court has explained, "every clause and word of a statute should have meaning," and "no clause, sentence, or word shall be superfluous, void, or insignificant." *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (quotation marks omitted); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). If § 1225(b)(2)(A) applied to all "applicant[s] for admission," it would render the phrase "seeking admission" unnecessary and a mere surplusage. *E.g.*, *Benitez*, 2025 WL 2371588, at *6; *see also Zumba*, 2025 WL 2753496, at *8.

By way of example, removing the words "seeking admission" from § 1225(b)(2)(A) would not alter its meaning under Respondents' theory: "[I]n the case of an alien who is an applicant for

admission, if the examining immigration officer determines that an alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]" That result is inconsistent with the principle that courts must interpret a statute to give meaning to "every clause and word" that Congress chose to include. *See Polansky*, 599 U.S. at 432 (quotation marks omitted).

Petitioner's interpretation, that § 1225(b)(2)(A) applies only when a noncitizen is affirmatively "seeking admission" at or near the border or a port of entry, comports with the ordinary meaning of the statutory text. (ECF No. 8 at 13–15). It gives meaning to the words "seeking admission," and remains faithful to *Jennings*, where the Supreme Court explained that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *Jennings*, 583 U.S. at 285, 289, 297. As opposed to § 1226, which "generally governs the process of arresting and detaining . . . *aliens already in the country* pending the outcome of removal proceedings." *Id.* at 288–89 (emphasis added).

Petitioner's interpretation is also consistent with "the overall statutory scheme." *See Util. Air Regul. Grp.*, 573 U.S. at 320. The titles, headings, and other provisions of § 1225 repeatedly refer to "inspection," and "inadmissible arriving aliens," and "examin[ations]," which typically "occur at ports of entry, their functional equivalent, or near the border." *Zumba*, 2025 WL 2753496, at *8. It strains credulity to conclude, as Respondents argue, that Petitioner was "seeking admission" to the United States when ICE officers "inspected" and detained him, (ECF No. 7 at 12), while he was working at a fruit packing facility in New Jersey.[3] (ECF No. 1 at ¶ 1).

---

[3] Moreover, courts have given significant weight to how DHS itself treated the petitioner in determining which detention statute governs. *See Benitez*, 2025 WL 2371588, at *3; *Zumba*, 2025 WL 2753496, at *9. That principle applies here: when DHS apprehended Petitioner and issued the two Notices to Appear, it designated him as an "alien present in the United States."

13

The BIA's contrary conclusion in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), does not alter this result. This Court owes no deference to an agency interpretation that conflicts with the statute's unambiguous text.[4] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–01 (2024) (observing that while "agencies have no special competence in resolving statutory ambiguities," "[c]ourts do"); *Zumba*, 2025 WL 2753496, at *9 ("[T]his Court need not defer to . . . *Hurtado*, and its newly-minted interpretation of § 1225(b)(2)(A).") (citation omitted); *see also Chang Barrios v. Shepley*, No. 25-406, 2025 WL 2772579, at *9 (D. Me. Sept. 29, 2025); *Salcedo Aceros v. Kaiser*, No. 25-06924, 2025 WL 2637503, at *9 (N.D. Cal. Sept. 12, 2025).

For all these reasons, the Court concludes that § 1225(b)(2)(A) applies only to noncitizens who are actively, *i.e.*, affirmatively, "seeking admission" to the United States. Accordingly, it does not apply to individuals like Petitioner, who has been residing in the United States "for over seven years."[5] (ECF No. 1 at ¶ 2). This Court joins the *vast* majority of district courts that have arrived at the same conclusion. *See, e.g.*, *Belsai D.S. v. Bondi*, No. 25-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Quispe v. Crawford*, No. 25-1471, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025); *Savane v. Francis*, No. 25-6666, 2025 WL 2774452 (S.D.N.Y. Sept. 28, 2025); *Zumba*, 2025 WL

---

(Pet'r's Reply, ECF No. 8 at 10–11, 24). Those choices confirm that Respondents themselves did not treat Petitioner as subject to § 1225(b).

[4] Indeed, while agencies may interpret ambiguity; they may not fabricate it. They may "clarify" only what Congress left unclear, not what Congress said plainly. *See Util. Air Regul. Grp.*, 573 U.S. at 328 ("[A]n agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate."). Respondents' position does not interpret the statute so much as invert it—a policy preference dressed in legal language and paraded as statutory faithfulness. Calling that a "clarification" is no act of interpretation; it is legislation without authority and lawmaking without accountability.

[5] "In reaching this conclusion, it is unnecessary to define the precise outer boundaries of when mandatory detention under § 1225 applies because it clearly does not apply to someone who has resided in the country for" seven years, like Petitioner. *See, e.g.*, *Benitez*, 2025 WL 2371588, at *5.

2753496; *Salazar v. Dedos*, No. 25-835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Lepe v. Andrews*, No. 25-01163, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Roman v. Noem*, No. 25-01684, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); *Giron Reyes v. Lyons*, No. 25-4048, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Singh v. Lewis*, No. 45–96, 2025 WL 2699219 (W.D. Ky. Sept. 22, 2025); *Barrera v. Tindall*, No. 25-541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Hasan v. Crawford*, No. 25-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Vazquez*, 2025 WL 2676082; *Garcia Cortes v. Noem*, No. 25-2677, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); *Lopez Santos v. Noem*, No. 25-1193, 2025 WL 2642278 (W.D. La. Sept. 11, 2025); *Perez v. Kramer*, No. 25-3179, 2025 WL 2624387 (D. Neb. Sept. 11, 2025); *Pizarro Reyes v. Raycraft*, No. 25-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Hinestroza v. Kaiser*, No. 25-7559, 2025 WL 2606983 (N.D. Cal. Sept. 9, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-326, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *JOE v. Bondi*, No. 25-3051, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Leal-Hernandez v. Noem*, No. 25-2428, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Lopez-Campos v. Raycroft*, No. 25-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Benitez*, 2025 WL 2371588. It is clear that this Court is not alone in its rejection of *Hurtado*.

### C. The Due Process Clause

Having determined that § 1225(b)(2)(A) does not apply to Petitioner, the Court notes that he would ordinarily fall within the discretionary detention framework of § 1226(a). *See Jennings*, 583 U.S. at 288–89 ("Section 1226 generally governs the process of arresting and detaining . . . aliens already in the country pending the outcome of removal proceedings.") Respondents, however, have not argued in the alternative that § 1226(a) applies to Petitioner. (*See* ECF No. 7). In any event, Petitioner's continued mandatory detention under § 1225(b)(2)(A) violates his procedural due process rights.

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. To determine what process is due, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *B.C. v. Att'y Gen. United States*, 12 F.4th 306, 314–15 (3d Cir. 2021). Under *Mathews*, courts weigh three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *B.C.*, 12 F.4th at 315.

Here, the first factor weighs heavily in Petitioner's favor, as the official action has deprived him of his physical liberty. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."); *see, e.g.*, *Barrios*, 2025 WL 2772579, at *11; *Zumba*, 2025 WL 2753496, at *10.

Similarly, the second *Mathews* factor weighs heavily in Petitioner's favor, as he is presently and *erroneously* detained under the mandatory detention provisions of § 1225, without an opportunity for a bond hearing. *Barrios*, 2025 WL 2772579, at *11; *Zumba*, 2025 WL 2753496, at *10. Nor do Respondents suggest that he would be denied bond if he were afforded such a hearing. (*See* ECF No. 7); *see also Barrios*, 2025 WL 2772579, at *11 (discussing the importance

of respondents' failure to show that petitioner "present[ed] any public safety or flight risk"); *Benitez*, 2025 WL 2371588, at *12 (same).

Finally, the third *Mathews* factor, the Government's interests in detaining noncitizens are typically "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *See, e.g.*, *Zadvydas*, 533 U.S. at 690 (cleaned up). The Court finds that this factor weighs moderately in Petitioner's favor, as Respondents do not dispute that he has no criminal record, (*see* ECF No. 1 at ¶ 65), and have not alleged that he poses a risk of flight. (*See* ECF No. 7).

Taken together, the Court finds that the *Mathews* factors weigh decisively in Petitioner's favor, and as such his mandatory detention under § 1225(b)(2)(A) violates his procedural due process rights. *See Barrios*, 2025 WL 2772579, at *11; *Zumba*, 2025 WL 2753496, at *10; *Benitez*, 2025 WL 2371588, at *12–13.

## IV. CONCLUSION

In short, Petitioner's detention under § 1225(b)(2)(A) is unlawful under the INA and violates his procedural due process rights.[6] As Respondents have not argued in the alternative that Petitioner should be detained under § 1226(a), the Court cannot construe the record to authorize his continued detention on that basis. Accordingly, the Court will order Petitioner's immediate release and permanently enjoin Respondents from re-detaining him under § 1225. *See, e.g.*, *Zumba*, 2025 WL 2753496, at *11. Should Respondents elect to later detain him under § 1226(a) and fail

---

[6] As the Court will grant the Petition on the grounds that Petitioner's detention is unlawful under the INA and violates his procedural due process rights, the Court declines to consider Petitioner's remaining arguments, including his claims under the Administrative Procedure Act, his challenge to the denial of bond, and his substantive due process claim. (ECF No. 1 at ¶¶ 51–62).

to provide him with a timely bond hearing, at which an immigration judge assesses whether he is a danger or a flight risk, Petitioner may move to reopen this matter. An appropriate Order follows.

DATED: October 22, 2025

<u>/s/ Christine P. O'Hearn</u>
**Christine P. O'Hearn**
**United States District Judge**
